51 CCPA

**Application of Robert H. SLOWINSKI.**
**Patent Appeal No. 7104.**

United States Court of Customs
and Patent Appeals.
June 11, 1964.

Robert F. Hause, James W. Dent, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (J. W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

The subject matter involved in this appeal is a demountable partition for use in office and industrial buildings. The device, as defined in appealed claims 1–5, 8, 10 and 12 of appellant's patent application (Serial No. 584,307, filed May 11, 1956), consists essentially of two channels, a panel, and a spring. One channel is secured to the floor and the other channel is fixed above and parallel to the first, usually on the ceiling. The spring, which may be either of the bowed leaf or of the bent wire variety, is positioned in the lower channel. The panel is mounted by introducing its lower edge into the floor channel over the spring; thrusting down on the panel so as to depress the spring and simultaneously rocking the panel towards the plane of the channels so that the upper edge of the panel just clears the near flange of the ceiling channel; and releasing the downward thrust so that the compressed spring elevates the panel until the panel's upper edge projects into the ceiling channel. To keep the lower edge of the panel from popping out of the floor channel, limit stops are provided in the ceiling channel for the upper edge of the panel.

Appellant asserts that the distinctive feature of his invention is ease in mounting and demounting, since the weight of the panel helps to compress the spring during those operations. Also, the springs provide complete stability and rigidity, thereby avoiding shifting or vibration of the panels, decreasing sound transmission and absorbing any expansion or contraction within the building structure. Alternatively, appellant asserts that in addition to making the mounting and demounting easier, advantage can be taken of the fact that the panel is supported by the spring; since the workman does not have to support the entire weight of the panel, he is free to give more attention to inserting the panel into relatively tight-fitting, closely dimensioned channels, whereby the panel will be held much more firmly.

Claim 1 is representative of those on appeal and reads as follows:

"A demountable partition comprising an upwardly opening bottom channel, a downwardly opening top channel held in fixed spaced relation parallel to and above said bottom channel, a resilient, vertically compressed spring disposed within said bottom channel, a partition panel having a bottom edge disposed within said bottom channel above said spring and having a top edge disposed within said top channel, said compressed spring constantly urg-

ing said panel upwards, said spring and said panel being vertically restrained by said relatively fixedly spaced top channel."

All of the remaining claims except claim 12 are dependent on claim 1. Claims 2–5 are merely more specific with respect to the type and position of the spring. Claims 8, 10 and 12 add to claim 1 the requirement that there be a limit stop provided in the ceiling channel; claim 8 calls for "spacing clips" while claims 10 and 12 specify a false top in the ceiling channel.

The examiner's rejection, sustained by the board, was based on the following references:

| | | | | |
|---|---|---|---|---|
| Mayo | 1,462,208 | July | 17, | 1923 |
| Stitt | 2,481,794 | Sep. | 13, | 1949 |
| Hammitt et al. | 2,808,136 | Oct. | 1, | 1957 |
| Cooper (British) | 709,239 | May | 19, | 1954 |

Mayo discloses a wall construction wherein opposed channels are fixed to the floor and ceiling, and panels are lifted into the upper channel and permitted to fall into the lower channel. A spacing bar is placed in the lower channel to serve as a limit stop for the dropped panels.

Cooper discloses a wall construction wherein a base block is fixed to the floor and a cornice is fixed to the ceiling. Studs are mounted by placing the lower end of the stud over a spring which is inserted between flanges in the base block, thrusting down on the stud so as to compress the spring while moving the upper end of the stud under the cornice, and releasing the stud so as to permit the spring to thrust it upwards where its upper end mates with a suitable aperture in the cornice. Panels are mounted alternately with respect to the stud installations by sliding them horizontally into grooves which are provided in the cornice and base block.

Hammitt et al. discloses a wall construction wherein an upper ceiling channel has a false internal top surface.

Stitt discloses an arrangement for a ceiling mosaic made up of decorative panels, wherein channels fixed at the periphery of the ceiling have leaf springs which bear against the peripheral rows of panels. The force of the springs urges the panels of the entire mosaic into close abutment with one another.

Claim 1 was rejected as unpatentable over Mayo in view of Cooper. As the examiner correctly pointed out:

"* * * Mayo's wall panels are urged downwardly and held in place within a relatively shallow bottom channel by gravity. They can be removed only by being displaced upwardly against the force of gravity so that their bottom edges will clear the relatively shallow bottom channel whereupon said edges can be swung clear of said channel and the panels disengaged from the relatively deep top channel. It is considered that applicant has in effect, turned Mayo's structure upside-down thereby reversing the direction (from downwardly to upwardly) in which the Mayo panels must be urged toward their locked position. Such reversal obviously necessitates the use of some upwardly acting force producing means such as springs as a substitute for the downwardly acting gravitational force utilized by Mayo for holding the panels in their locked position within the relatively shallow bottom channel."

We agree with this analysis. Moreover, we do not find persuasive appellant's argument that the examiner and the board failed to attach proper significance to the fact that the spring-urged member disclosed in Cooper is a stud rather than a panel. We think it would have been obvious for one of ordinary skill in the art to use a spring in connection with the panel, instead of with the stud as shown in Cooper.

In rejecting claims 2–5, the examiner cited Stitt in addition to Mayo and Cooper. As stated by the board:

"* * * The particular shape of spring used has not been shown to

be critical in the organization and the Stitt patent shows that springs of the flat or bow type have heretofore been used as panel retaining elements. * * * "

We agree that the use of leaf-type bow springs or arcuately shaped wire springs would have been obvious, especially in view of Stitt. Furthermore, we can perceive no patentable significance in the requirement that the panel be "substantially centrally disposed and supported upon" the spring, as specified in claims 3 and 5. We think such positioning of the spring with respect to the panel would have been obvious when tested by the requirements of 35 U.S.C. § 103.

Finally, claims 8, 10 and 12 were rejected as unpatentable over the same combination of references applied to claims 2–5, when taken further with Hammitt et al. Hammitt et al. was cited to show that the use of a false internal top surface in a ceiling channel was old in the art. We agree with the board and the examiner that it would have been obvious in view of the Hammitt et al. structure to employ a false top in the ceiling channel of appellant's device. We likewise feel that the use of a "spacing clip," as specified in claim 8, would have been obvious. The only difference between the spacing clip and the false top structure is that the former is removable while the latter is fixed, and this distinction has not been shown to have patentable significance.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.